UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    ○

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-9075-CAS(RZx) | Date | January 15, 2014 |
|---|---|---|---|
| Title | KENNETH L. TATE V. KAISER FOUNDATION HOSPITALS, ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants |
|---|---|
| Not Present | Not Present |

**Proceedings:**     (IN CHAMBERS): MOTION FOR SUMMARY JUDGMENT
(Dkt. #28, filed November 1, 2013)

## I.     INTRODUCTION

Plaintiff Kenneth Tate filed this action in Los Angeles County Superior Court on January 27, 2012, against defendants Kaiser Foundation Hospitals ("Kaiser"), James Edsel Moore, M.D., Bryan Giao Ngo, M.D., Adelene Rose James, M.D., Haroutyan Keshishian Shamamian, M.D., five unknown officers of the Los Angeles Police Department, and Does 1 through 100.  Dkt. #1.  Plaintiff filed a first amended complaint ("FAC") on August 1, 2012.  Id.  The FAC asserts five claims for relief, as follows: (1) violation of civil rights under 42 U.S.C. § 1983, (2) violation of rights secured by the California Constitution, (3) violation of the Lanterman-Petris-Short Act ("LPS Act"), Cal. Welf. & Inst. Code § 5100, et seq., (4) false imprisonment, and (5) medical negligence.  Id.  Defendants removed the action to this Court on October 22, 2012.  Id. The remaining defendants in this action are Kaiser and Doctors Moore, Ngo, James, and Shamamian.

Defendants filed a motion for summary judgment as to all claims on November 1, 2013.  Dkt. #28.  Plaintiff filed an opposition on December 20, 2013, dkt. #40, and defendants replied on January 8, 2014, dkt. #41.  The Court held a hearing on January 13, 2014.  At the hearing, the Court granted plaintiff leave to file a supplemental brief to address the applicability of Sturm v. El Camino Hospital, 2010 WL 725563, at *3 (N.D. Cal. Feb. 26, 2010), to the present case.  Dkt. #50.  Plaintiff filed a supplemental brief on January 13, 2014, dkt. #48, and defendants responded on January 14, 2014, dkt. #49. After considering the parties' arguments, the Court finds and concludes as follows.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    ○

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-9075-CAS(RZx) | Date | January 15, 2014 |
|---|---|---|---|
| Title | KENNETH L. TATE V. KAISER FOUNDATION HOSPITALS, ET AL. | | |

## II.    BACKGROUND

The parties contest the facts underlying this action.  Defendants assert the following facts, based on information contained in plaintiff's medical records.[1]  Plaintiff

---

[1] Plaintiff objects to defendants' reliance on plaintiff's medical records for two reasons.  Opp. Mot. Summ. J. 5-10.  First, plaintiff argues that the records are inadmissible hearsay because the records are not accompanied by a declaration from a custodian or other qualified witness as required by Federal Rule of Evidence 803(6)(d).  Opp. Mot. Summ. J. 7-9.   The Court agrees.  While medical records are ordinarily admissible under the "business records" exception to the hearsay rule, see, e.g., Stakey v. Stander, 2011 WL 4452493, at *1 (D. Idaho Sept. 26, 2011), the facts supporting such admissibility must be supplied by a custodian of records or other competent witness, see Fed. R. Evid. 803(6)(d), 902(11).  The witness must attest, either by live testimony or in a certification, that: (1) the record was made at or near the time of the event described therein, by someone with personal knowledge, (2) the record was kept in the course of a regularly conducted activity of a business, and (3) it was a regular practice of the business to make such a record.  Fed. R. Evid. 803(6)(a)-(d).

Here, defendants have failed to satisfy these requirements because the declaration appended to plaintiff's medical records states that the records were "prepared and received by [Kaiser] in the ordinary course of business at or near the time of the act, condition, or event."  Dong Decl. ¶ 2.  The declaration does not state that it was a "regular practice of the business to make such a record."  See Fed. R. Evid. 803(6)(c).  Accordingly, the records are hearsay because Dong Declaration does not meet the requirements of Rule 803(6).  However, even if the records were not hearsay, the Court would still find that genuine disputes of material fact exist based on plaintiff's statements in the declaration appended to his opposition to defendants' motion.

Second, plaintiff argues that the records have not been properly authenticated.  Opp. Mot. Summ. J. 5-10.  This argument is unavailing.  The Federal Rules of Evidence provide multiple avenues for the authentication of medical records.  First, medical records may be authenticated under Federal Rule of Evidence 902(11) through a declaration attesting that the records "meet[] the requirements of Rule 803(6)."  Fed. R. Evid. 902(11).  As stated above, the Dong Declaration does not meet the requirements of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                                    ○

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-9075-CAS(RZx) | Date | January 15, 2014 |
|---|---|---|---|
| Title | KENNETH L. TATE V. KAISER FOUNDATION HOSPITALS, ET AL. | | |

was taken to the emergency room of the Kaiser hospital located at 4867 Sunset Boulevard, in Los Angeles County, at 11:57 pm on November 23, 2010, with an "altered level of consciousness."  Defendants' Statement of Undisputed Material Facts ("SUMF") ¶ 1.  According to the records, plaintiff was accompanied by paramedics and police, who noted "bizarre behavior and agitation" by plaintiff.  Id. ¶ 2.  The records state that plaintiff was verbally abusive to fire department and police department personnel who encountered him prior to bringing him to the emergency room.  Id. ¶ 3.  Plaintiff also made threats to Kaiser physicians and staff members.  Id. ¶ 4.

The records further state that Bryan Ngo, M.D., evaluated plaintiff in the emergency room.  Id. ¶ 5.  The evaluation showed that plaintiff was hypertensive, and tests indicated possible marijuana use and an elevated blood alcohol level.  Id. ¶¶ 6-9.  Plaintiff was sedated using Haldol and Ativan.  Id. ¶ 11.  The records also state that Ngo ordered a lumbar puncture to rule out possible meningitis or encephalitis, and a "two physician consent" was obtained for the procedure, which was performed at 2:30 am on November 24, 2010.[2]  Id. ¶¶ 11-12.  The lumbar puncture results were negative.  Id. ¶ 13.

---

Rule 803(6)(c), so the records are not authenticated on this basis.  However, the records are also subject to authentication under Federal Rule of Evidence 901(b)(4) based on the records' "appearance, contents, substance, internal patterns, or other distinctive characteristics."  The Court finds that the records have been authenticated on this basis.  The records are marked with plaintiff's name and date of birth, as well as the words "Kaiser Permanente" and the dates of plaintiff's hospitalization at the Kaiser facilities on Sunset Boulevard and West College Street.  See Mot. Summ. J. Exs. A-G.  Additionally, while the Dong Declaration does not comply fully with Rule 803(6), it nonetheless weighs in favor of the Court's conclusion that the records are what defendants claim them to be.  See Fed. R. Evid. 901(a); Hollis v. Sloan, 2012 WL 5304756, at *4 (E.D. Cal. Oct. 25, 2012) (finding that medical records are authentic under Rule 901(b)(4)); Goedecke v. Vinivan, 2008 WL 2668768, at *4 (D. Ariz. July 1, 2008) (noting that the "better practice" is to provide a declaration to authenticate medical records, but that authentication may also be achieved through Rule 901(b)(4)).

[2] Defendants do not explain how this two-physician consent bears on the question of whether defendants are entitled to immunity from liability arising out of performing the lumbar puncture.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    ○

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-9075-CAS(RZx) | Date | January 15, 2014 |
|---|---|---|---|
| Title | KENNETH L. TATE V. KAISER FOUNDATION HOSPITALS, ET AL. | | |

The records state that, thereafter, physicians at Kaiser conducted additional tests, but were unable to determine the cause of plaintiff's mental condition.  Id. ¶¶ 15-20.  Ilan Bernstein, M.D. spoke with plaintiff's mother on the morning of November 24, 2010, and she informed him that plaintiff had developed "pressured speech" approximately one week prior to plaintiff's arrival at Kaiser.  Id. ¶ 21.  Additionally, one of plaintiff's friends informed Dr. Bernstein that he encountered plaintiff on the night of November 23, 2010, and found plaintiff to be "agitated and combative."  Id. ¶ 23.  The records state that Dr. Bernstein admitted plaintiff for further evaluation and ordered a psychiatric consultation.  Id. ¶ 25.

According to the records, Paul Hartman, M.D. attempted to perform a psychiatric consultation on the afternoon of November 24, 2010, but plaintiff was sedated and unable to be evaluated.  Id. ¶¶ 26-27.  The records state that Adelene James, M.D. performed a psychiatric consultation on November 25, 2010, and also spoke with plaintiff's father.  Id. ¶ 28.  Dr. James assessed plaintiff with "altered mental status, rule out bipolar disorder."  Id. ¶ 29.  Dr. James wrote an application to detain plaintiff for 72 hours pursuant to Cal. Welfare & Institutions Code § 5150.  Id. ¶ 30.  Plaintiff was transferred to Kaiser Mental Health Center, located at 765 West College Street, in Los Angeles County, and thereafter evaluated by Nathalie Maullin, M.D. on November 26, 2010.  Id. ¶¶ 30-31.  The records state that Dr. Maullin documented plaintiff's version of the events leading to his arrest and subsequent arrival at the Kaiser Sunset facility.  Id. ¶¶ 31-33.  Based on that evaluation, Dr. Maullin's diagnosis was "Axis I mood disorder not otherwise specified, rule out bipolar disorder type I, most recent episode manic, rule out substance induced mood disorder, cannabis and alcohol abuse."  Id. ¶ 34.  The records further state that Dr. Maullin determined that plaintiff met the criteria for a 72 hour hold under Cal. Welfare & Institutions Code § 5150.  Id. ¶ 35.  The records state that, during the hold, plaintiff attended group sessions and was counseled regarding bipolar disorder.  Id. ¶ 36.  Dr. Moore discharged plaintiff on November 28, 2010.  Id. ¶ 39.[3]  Additionally, Kent Shoji, M.D., and Thomas Garrick, M.D., state that they reviewed plaintiff's medical

---

[3] The SUMF also contains assertions regarding events that occurred after plaintiff's discharge from the hospital on November 28, 2010.  SUMF ¶¶ 40-42.  Those events are not relevant to any of plaintiff's claims or defendants' arguments regarding immunity. Therefore, the Court does not set forth those facts here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                      O

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-9075-CAS(RZx) | Date | January 15, 2014 |
|---|---|---|---|
| Title | KENNETH L. TATE V. KAISER FOUNDATION HOSPITALS, ET AL. | | |

records and are of the opinion that the medical treatment provided to plaintiff was within the standard of care.  Id. ¶¶ 43-44; 56-57.

Plaintiff submits a separate statement of material facts ("SSMF"), in which he disputes the version of events detailed in defendants' SUMF.[4]  According to plaintiff, he was taken by force from his apartment on November 23, 2010, and was brought to the Kaiser facility on Sunset Boulevard.  SSMF ¶ 2.  Plaintiff states that he was "conscious, able to recognize [his] environment, able to communicate with others, able to understand what others were saying to [him], and in complete disagreement about the situation [he] found [himself] in, including the fact that [he] was physically restrained and being moved about with [his] consent and over [his] objection."  Id. ¶ 2.  According to plaintiff, he was not under the influence of marijuana or alcohol at the time that the police and firefighters arrived at his apartment.  Id. ¶ 6.  Additionally, plaintiff states that he "was never a physical threat to any staff member at Kaiser," and was "always physically restrained."  Id. ¶ 7.  Plaintiff asserts that he was never informed that he would be sedated with Haldol and Ativan, and if asked, he would have refused the administration of those drugs.  Id. ¶ 7.

Plaintiff states that a lumbar procedure was then performed without his consent, and if asked, he would have refused his consent.  Id. ¶ 9.  Plaintiff also states that he was not interviewed by Dr. James or Dr. Maullin.  Id. ¶ 14.  Additionally, plaintiff asserts that the records are inaccurate with regard to his account of the events leading up to his hospitalization.[5]  Id.  Finally, plaintiff asserts that he never received any documents

---

[4] Defendants object to several sections of the SSMF on the grounds that the assertions therein are irrelevant, lack foundation, and provide improper expert testimony. Supp. Evid. Objections ¶¶ 1-6.  Those objections are OVERRULED because plaintiff's declaration appears to be based on personal knowledge, relates to the events that form the basis for this action, and does not opine on matters that are exclusively within the province of experts.

[5] Plaintiff states in his declaration that the "story" contained in his medical records is inaccurate.  SSMF ¶ 14.  The Court construes this statement as referring to the events described in notes of interviews conducted with plaintiff by Dr. James and Dr. Maullin. See Mot. Summ. J. Ex. F at 1-3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    ○

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-9075-CAS(RZx) | Date | January 15, 2014 |
|---|---|---|---|
| Title | KENNETH L. TATE V. KAISER FOUNDATION HOSPITALS, ET AL. | | |

explaining the basis for his detention, either at the Kaiser facility on Sunset Boulevard, or the Kaiser Mental Health Center on West College Street.  Id. ¶¶ 9-10.

## III.    LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e).  The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit."  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324.  Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law.  See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987).  When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997).  Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue.  See Matsushita, 475 U.S. at 587.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-9075-CAS(RZx) | Date | January 15, 2014 |
|---|---|---|---|
| Title | KENNETH L. TATE V. KAISER FOUNDATION HOSPITALS, ET AL. | | |

### IV.   DISCUSSION

#### A.   Plaintiff's Claims Under 42 U.S.C. § 1983 and Article I, Sections 2, 3, 7, and 13 of the California Constitution

Defendants contend that summary judgment is warranted as to plaintiff's claims under 42 U.S.C. § 1983 because defendants are not state actors.  Mot. Summ. J. 19.  The Court agrees.  42 U.S.C. § 1983 is inapplicable to "merely private conduct."  American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999).  The only evidence or argument advanced by plaintiff in support of his contention that defendants are state actors is that Kaiser is authorized by Los Angeles County to provide services under the LPS Act.  Opp. Mot. Summ. J. 11-12.  This argument is unavailing because "the fact that the government has granted a private entity certain powers and privileges under the law is insufficient to make the private entity's conduct state action."  Sturm v. El Camino Hospital, 2010 WL 725563, at *3 (N.D. Cal. Feb. 26, 2010) (granting summary judgment to defendant in action under 42 U.S.C. § 1983 on the grounds that hospital conducting detention under LPS Act was not state actor).[6]

Similarly, the absence of state action mandates the granting of summary judgment on plaintiff's claims under Article I, Sections 2, 3, 7 and 13 of the California Constitution.[7]  Regarding Sections 7 and 13, state action is lacking for the same reason that it is lacking under 42 U.S.C. § 1983.  See Garfinkle v. Superior Court, 21 Cal.3d

---

[6] In his supplemental brief, plaintiff renews his argument that Kaiser is a state actor by virtue of its authorization by Los Angeles County to provide services under the LPS Act.  Supp. Opp. 2-3.  Plaintiff does not distinguish Sturm or provide authority contrary to the holding in Sturm.  Accordingly, the Court declines to reconsider its conclusion that Kaiser and the defendant doctors are not state actors.

[7] Article I, Section 2 protects the right to freedom of speech, and Article I, Section 3 protects the right to "petition government for redress of grievances, and assemble freely."  Article I, Section 7 provides that a person may "not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws," and Article I Section 13 protects the "right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                                    O

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-9075-CAS(RZx) | Date | January 15, 2014 |
|----------|----------------------|------|------------------|
| Title | KENNETH L. TATE V. KAISER FOUNDATION HOSPITALS, ET AL. | | |

268, 282 (1978) (explaining that California's state action jurisprudence under Section 7 is substantially the same as the federal jurisprudence); <u>People v. De Juan</u>, 171 Cal. App. 3d 1110, 1120 (1985) (noting that the "provisions prohibiting unreasonable searches and seizures found in both the federal and California Constitutions . . . are applicable only to searches and seizures by the government or its agents"). As to plaintiff's claims under Sections 2 and 3, state action is lacking under California law because Kaiser's property is not "freely and openly accessible to the public." <u>See</u> <u>Golden Gateway Center v. Golden Gateway Tenants Ass'n</u>, 26 Cal.4th 1013, 1033 (2001) (noting that the California Courts of Appeal "have consistently held that privately owned medical centers and their parking lots are not functionally equivalent to a traditional public forum for purposes of California's free speech clause"); <u>Albertson's, Inc. v. Young</u>, 107 Cal. App. 4th 106, 133 (2003) (noting that the protections of Article I, Section 3 are limited to public fora).[8]

###    B.    Plaintiff's Claim for Medical Negligence

Defendants argue that they are also entitled to a grant of summary judgment on plaintiff's medical negligence claim because he has offered no expert testimony stating that he received treatment below the standard of care. Mot. Summ. J. 17, 19-20. The Court finds this argument persuasive. The standard of care "ordinarily possessed and exercised" by members of the medical profession is the "basic issue" in medical negligence actions. <u>Hutchinson v. United States</u>, 838 F.2d 390, 392 (9th Cir. 1988) (citation omitted). This standard "can be proven only by expert testimony." <u>Id.</u> "When a defendant moves for summary judgment and supports his motion with expert declarations that his conduct fell within the community standard of care, he is entitled to summary judgment unless the plaintiff comes forward with conflicting expert evidence." <u>Id.</u> (citing <u>Willard v. Hagemeister</u>, 121 Cal. App. 3d 406, 412 (1981)).

Here, defendants have provided a declaration from Kent Shoji, M.D., a board certified physician in internal medicine, rheumatology, and emergency medicine, stating that he reviewed plaintiff's medical records and deposition transcript, and is of the

---

[8] The Court does not grant summary judgment to defendants as to plaintiff's claim under Article I, Section 1 of the California Constitution because that Section applies to private conduct as well as conduct of state actors. <u>E.g.</u>, <u>Low v. LinkedIn Corp.</u>, 900 F. Supp. 2d 1010, 1024 (N.D. Cal. 2012).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                                    ○

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-9075-CAS(RZx) | Date | January 15, 2014 |
|---|---|---|---|
| Title | KENNETH L. TATE V. KAISER FOUNDATION HOSPITALS, ET AL. | | |

opinion that the care and treatment rendered by Kaiser, Dr. Ngo, and Dr. Shamamian was "within the standard of care." Shoji Decl. ¶ 8. Additionally, Thomas Garrick, M.D., a physician certified in psychiatry by the American Board of Psychiatry and Neurology, states that he reviewed plaintiff's medical records and deposition transcript, and is of the opinion that the care provided by Kaiser and Doctors Moore, Ngo, James, and Keshishian was "within the standard of care." Garrick Decl. ¶ 12. Since plaintiff provides no expert evidence in opposition to that of defendants, summary judgment in favor of defendants is appropriate as to plaintiff's medical negligence claim. See Hutchinson, 838 F.2d at 392.

Plaintiff argues that the opinions offered by Doctors Shoji and Garrick are inadmissible because they do not provide the basis for their conclusions. Opp. Mot. Summ. J. 9. This argument fails because it is contradicted by statements in both declarations that the opinions are based on a review of plaintiff's medical records and deposition transcript. Shoji Decl. ¶ 8; Garrick Decl. ¶ 12. Plaintiff alternatively argues that the opinions offered by Doctors Shoji and Garrick are inadmissible because they rely on medical records that are not properly authenticated. Opp. Mot. Summ. J. 9. This argument also fails because, as stated above, the Court concludes that the records have sufficient indicia of authenticity to be admitted under Federal Rule of Evidence 901(b)(4). To the extent that plaintiff also argues that the deficiencies in the Dong Declaration preclude Doctors Shoji and Garrick from relying on plaintiff's medical records as the basis for an expert opinion, this argument also fails because experts may rely on hearsay in rendering an opinion. See Shusterowitz c. Salem Assocs., 2001 WL 34039484, at * 1 (D. Ore. Dec. 13, 2001) (noting that expert witnesses "may rely on hearsay, such as medical records, to render an opinion"); see Fed. R. Evid. 703 (noting that an expert in a particular field may rely on evidence not otherwise admissible if "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject").

> **C.    Plaintiff's Claims for False Imprisonment, Violation of the LPS Act, and Invasion of Privacy Rights Secured by Article I, Section 1 of the California Constitution**

Defendants assert that summary judgment is appropriate on all claims because they are immune from liability under Cal. Business & Professions Code § 2397 and Cal. Welfare & Institutions Code § 5278. As set forth above, the Court finds that other grounds support granting summary judgment to defendants on plaintiff's claims for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-9075-CAS(RZx) | Date | January 15, 2014 |
|---|---|---|---|
| Title | KENNETH L. TATE V. KAISER FOUNDATION HOSPITALS, ET AL. | | |

medical negligence, violation of rights secured by the United States Constitution, and all but one of plaintiff's claims for violation of rights secured by the California Constitution. However, the Court finds that the immunities asserted by defendants do not support granting summary judgment as to plaintiff's remaining claims because genuine disputes of material fact exist as to whether those immunities are applicable here. Accordingly, summary judgment is not warranted as to plaintiff's claims for false imprisonment, violation of the LPS Act, and invasion of the right to privacy secured by Article I, Section 1 of the California Constitution.

   1.  Immunity Under Cal. Business & Professions Code § 2397

  Cal. Business & Professions Code § 2397(a) provides immunity from liability to physicians that arises from a "failure to inform a patient of the possible consequences of a medical procedure" if the procedure is performed in response to an emergency, and the failure to inform results from (1) the patient being unconscious or "legally incapable of giving consent," or (2) the physician's belief that the procedure should be performed immediately, and that there is insufficient time to fully inform the patient. See also Haning, et al., Rutter Group–Cal. Practice Guide: Personal Injury, Ch.2, Pt. IV(H). Defendants contend that this statute immunizes them from liability based on any events that occurred from the time that plaintiff arrived at the Kaiser emergency room until the time that he was detained pursuant to the LPS Act. Mot. Summ. J. 4, 17-19.

  Defendants assert that this immunity applies because plaintiff was unable to provide consent to medical treatment due to his mental condition at the time that arrived at the emergency room. Mot. Summ. J. 4, 17-19. The Court disagrees for two independent reasons. First, a genuine dispute of material fact exists as to whether the immunity applies because plaintiff states that he was sufficiently conscious and aware of his surroundings to be able to give (or refuse) consent to the medical treatment that he received at the emergency room. SSMF ¶¶ 2-9.

  Second, this immunity is inapplicable to the situation in the present case because it applies only to medical negligence claims arising from a failure to obtain informed consent, and not to claims arising from a failure to obtain consent more generally. A claim based on a failure to obtain informed consent sounds in negligence, and "arises when the doctor performs a procedure without first adequately disclosing the risks and alternatives." Saxena v. Goffney, 159 Cal. App. 4th 316, 324-35 (2008). By contrast, a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                       ○

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-9075-CAS(RZx) | Date | January 15, 2014 |
|---|---|---|---|
| Title | KENNETH L. TATE V. KAISER FOUNDATION HOSPITALS, ET AL. | | |

claim for battery arises when a doctor performs a procedure without obtaining any consent.  Id.  Plaintiff's claims for false imprisonment, invasion of the right to privacy, and violation of Cal. Welfare & Institutions Code § 5150 are unrelated to the issue of whether defendants obtained informed consent before treating plaintiff.  Accordingly, the immunity provided by Cal. Business & Professions Code § 2397(a) is inapplicable to these claims, and summary judgment is therefore not warranted based on this immunity.

> 2.      Immunity Under Cal. Welfare & Institutions Code § 5278

Involuntary treatment of the mentally ill in California is governed by the LPS Act. Jacobs v. Grossmont Hosp., 108 Cal. App. 4th 69, 74 (2003).  The Act "is a comprehensive scheme designed to address a variety of circumstances in which a member of the general population may need to be evaluated or treated for different lengths of time."  Cooley v. Superior Court, 29 Cal. 4th 228, 253 (2002).  Under the Act, a designated facility may detain an individual for up to 72 hours for evaluation and treatment if there is "probable cause to believe that the person is, as a result of mental disorder, a danger to others, or to himself or herself, or gravely disabled."  Cal. Welf. & Inst. Code § 5150.[9]  The facility must obtain "an application in writing stating the circumstances under which. . . [the officer or mental health professional] has probable cause" for detaining the individual.  Id.[10]  California courts have adopted the probable cause standard for a warrantless arrest in interpreting § 5150.  This requires an officer to "be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant his or her belief or suspicion."  People v. Triplett, 144 Cal. App. 3d 283, 288 (1983); see also Bias v. Moynihan, 508 F.3d 1212, 1220 (9th Cir. 2007).  This includes facts "that would lead a person of ordinary care and prudence to believe, or to entertain a strong suspicion, that the person detained is mentally disordered and is a danger to himself or herself or is gravely disabled."  Triplett, 144 Cal. App. 3d at 288.  Once the individual arrives at the facility, a proper medical

---

[9] All citations to the LPS Act refer to the version of the statute in effect as of November 2010.

[10] Under § 5150.5, a determination of probable cause must be based upon all "available relevant information about the historical course of the person's mental disorder."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                        ○

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-9075-CAS(RZx) | Date | January 15, 2014 |
|---|---|---|---|
| Title | KENNETH L. TATE V. KAISER FOUNDATION HOSPITALS, ET AL. | | |

professional must "assess the individual in person to determine the appropriateness of the involuntary detention." Cal. Welf. & Inst. Code § 5151. Only if such a professional determines that admission is warranted may an individual continue to be held on an involuntary basis.

After a determination has been made that involuntary admission to the facility is appropriate, an individual must receive "an evaluation as soon as possible . . . and shall receive whatever treatment and care his or her condition requires for the full period that he or she is held." Id. § 5152(a). If the individual is administered any medication as a result of his or her illness, the individual must be provided with "written and oral information about the probable effects and side effects of the medication" as well as "reasonable alternative treatments available" as soon as possible after being detained. Id. § 5152(c). The detained individual also has"the right to refuse treatment with antipsychotic medication." Id. § 5325.2. The appropriate officers or medical professionals must also inform the individual of the reasons for his or her detention and treatment, and such information must be recorded with the patient's medical record upon admission. Id. § 5157. An individual may be detained for longer than 72 hours only when he or she is again evaluated by the professional staff of a facility, and the evaluating officer makes a determination that the individual is "a danger to others, or to himself or herself, or gravely disabled." Id. § 5250(a).

The Act provides for only limited immunity to those exercising authority under its provisions, as the California legislature recognized that although "intrusions on personal freedom may be necessary in certain circumstances, those circumstances must be both defined and limited." Heater v. Southwood Psychiatric Ctr., 42 Cal. App. 4th 1068, 1084 (1996). In particular, the Act immunizes individuals who exercise the detention, treatment, and evaluation authority vested in them "in accordance with the law," id. § 5278. Thus "the scope of section 5278 immunity extends to claims based on facts that are inherent in an involuntary detention pursuant to section 5150" but no further. Jacobs, 108 Cal. App. 4th at 74. "If there is probable cause for the detention, the statute therefore provides immunity for the decision to detain as well as for the detention and its inherent attributes, including the fact that the patient must necessarily be evaluated and treated without consent." Id. Additionally, the immunity does not apply if the detention does not comply with the other procedures set forth in the LPS Act, such as the provision of a written advisement to the patient for the reasons for the detention under Welfare & Institutions Code § 5157. See Bingham v. Cedars-Sinai Health Sys., 2004 WL 2137442,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                              ○

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-9075-CAS(RZx) | Date | January 15, 2014 |
|---|---|---|---|
| Title | KENNETH L. TATE V. KAISER FOUNDATION HOSPITALS, ET AL. | | |

at *15 (Cal. Ct. App. Sept. 24, 2004) (detention is "not in accordance with the law" if detaining entity does not provide required patient advisement).

Defendants argue that summary judgment should be granted as to plaintiff's claims arising from his detention pursuant to Cal. Welfare Institutions Code § 5150 because they are barred by the immunity conferred upon them by § 5278. Mot. Summ. J. 8-17. The Court finds this argument unpersuasive because the statements contained in the SSMF establish a genuine dispute of material fact as to whether defendants complied with the procedures set forth in the Act for conducting a 72 hour detention. In this regard, plaintiff states that defendants did not provide him a written advisement of the basis for his detention as required by § 5157, and did not interview him prior to detaining him. SSMF ¶¶ 9-10, 14. These statements establish a genuine dispute of material fact regarding whether the detention occurred "in accordance with the law," such that the immunity under § 5278 is applicable.

## V.    CONCLUSION

In accordance with the foregoing, the Court hereby GRANTS IN PART and DENIES IN PART defendants' motion for summary judgment.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |